**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 24, 2001**

CONNIE FANE and CHARLES FANE,

    Plaintiffs-Appellants,

v                            No. 116708

DETROIT LIBRARY COMMISSION,

    Defendant-Appellee.

_____

KAREN L. COX and NORMAN W. COX,

    Plaintiffs-Appellants,

v                            No. 116711

BOARD OF REGENTS OF THE
UNIVERSITY OF MICHIGAN,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

KELLY, J.

These consolidated cases question the scope of the public building exception to governmental immunity[1] in light of this Court's ruling in *Horace v City of Pontiac,* 456 Mich 744; 575 NW2d 762 (1998). The parties in *Fane* dispute whether the elevated terrace where plaintiff fell is part of Detroit's main public library building. In *Cox,* this Court must determine whether a portable ramp placed at a doorstep is part of the Fairlane Estate building in Dearborn.

We conclude that the public building exception can apply to parts of a building that extend beyond the walls. We hold the public building exception applicable under the undisputed facts in *Fane v Detroit Library Commission*, because the terrace is part of the building. Hence, we reverse the decision of the Court of Appeals.

In *Cox v Board of Regents of the University of Michigan*, applying the undisputed facts, we find that the ramp is not part of the building. Because the public building exception does not apply, we affirm the Court of Appeals decision.

### I. FACTS AND PROCEEDINGS

#### A. *FANE v DETROIT LIBRARY COMMISSION*

On October 21, 1995, Connie Fane was walking toward the main entrance of the Detroit Public Library. She climbed several stairs to a broad stone terrace that gives access to

---

[1]MCL 691.1406.

2

the doors of the library. After she had taken several steps on the terrace, the heel of her shoe caught on a raised portion of the stonework. She fell as a result and was injured. She and her husband, Charles, filed a complaint against the Detroit Library Commission. They alleged that, under the public building exception to governmental immunity, the commission violated its statutory duty to repair and maintain the terrace in a safe condition.

The commission sought summary disposition under MCR 2.116(C)(7) and (C)(10), arguing that governmental immunity bars plaintiffs' claim. The parties disputed whether the terrace was part of the building for the purpose of the public building exception. They agreed that the fall did not occur in the building itself but on the terrace approximately thirty-five yards from the entrance. Plaintiffs contended that the terrace is part of the permanent structure of the library building; it is physically attached to the building, and it provides the sole access to the main entrance.

When the trial court denied the commission's motion, the commission filed an appeal. In lieu of granting leave, the Court of Appeals, citing *Horace,* remanded for entry of an order granting summary disposition for the commission.[2] This

_____

[2]Unpublished order, entered May 8, 1998 (Docket No. 211232).

3

Court vacated the Court of Appeals decision and remanded the case for consideration with *Cox.* 459 Mich 944 (1999).[3]

On remand, the Court of Appeals reversed the lower court's denial of summary disposition, again relying on this Court's decision in *Horace*.[4] The Court concluded that the trial court had erred as a matter of law in finding that the terrace was part of the building. It noted that Connie Fane was not alleged to have fallen in the building, and it determined that the elevated terrace was "merely contiguous" and not part of the building itself.

The appeals court remanded the case to the trial court with instructions to enter an order of summary disposition in favor of the commission. This Court granted leave to appeal, ordering the case to be argued and submitted with *Cox.* 463 Mich 911 (2000).

B. *COX v BOARD OF REGENTS OF THE UNIVERSITY OF MICHIGAN*

On August 21, 1994, Karen Cox was visiting the Henry Ford estate to attend her niece's wedding. As she walked from the building to an outdoor porch, she stepped on a ramp that had been positioned at the doorstep. The heel of her shoe caught

---

[3]The order also consolidated *Maskery v Univ of Mich Bd of Regents* (Docket No. 109065). *Maskery* is not part of this appeal.

[4]Unpublished opinion per curiam, issued March 24, 2000 (Docket No. 211232).

in a space between the door and the ramp, and the ramp slipped, causing her to fall.

In a multicount complaint, Karen and her husband, Norman, sued the Board of Regents of the University of Michigan, the owners of the property. They alleged that the ramp was a dangerous or defective condition and that the board breached its duty under the public building exception to governmental immunity by failing to secure it in a proper fashion.

The board moved for summary disposition, arguing that the public building exception did not apply. The board contended that, because it was not affixed to the building, the ramp was not part of the building itself. Plaintiffs responded that a reasonable trier of fact could conclude that the ramp was part of the building, notwithstanding that it was portable and unattached.

The trial court granted the board's motion for summary disposition, citing MCR 2.116(C)(7). The Court of Appeals denied plaintiffs' delayed application for leave to appeal.[5] This Court remanded to the Court of Appeals for consideration as on leave granted. 459 Mich 883 (1998).

On remand, the Court of Appeals affirmed the grant of

---

[5]Unpublished order, entered July 2, 1998 (Docket No. 208644).

summary disposition in favor of the board.[6]  Relying on this

Court's decision in *Horace* and a fixtures analysis*,* the court

determined that the ramp was not a fixture or an integral part

of the building.

The Court concluded that the trial court had properly

found that the public building exception was not applicable.[7]

This Court granted leave to appeal, ordering the case to be

argued and submitted with *Fane.*  463 Mich 911 (2000).

## II.  LEGAL PRINCIPLES

### A.  STANDARDS OF REVIEW

In both cases, the Court of Appeals upheld summary

disposition under MCR 2.116(C)(7).  We review decisions on

summary disposition motions de novo.  *Sewell v Southfield Pub*

*Schs,* 456 Mich 670, 674; 576 NW2d 153 (1998).  Under MCR

2.116(C)(7), summary disposition is proper when a claim is

barred by immunity granted by law.  To survive such a motion,

the plaintiff must allege facts justifying the application of

an exception to governmental immunity.  *Wade v Dep't of*

*Corrections,* 439 Mich 158, 164; 483 NW2d 26 (1992).  We

consider all documentary evidence submitted by the parties,

---

[6]Unpublished opinion per curiam, issued March 24, 2000 (Docket No. 215337).

[7]The decision also addressed the issue of proprietary function, which is not presented in this appeal pursuant to this Court's order granting leave to appeal.

accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them. *Sewell, supra* at 674; MCR 2.116(G)(5).

### B. THE PUBLIC BUILDING EXCEPTION

Under MCL 691.1407(1), a government agency is generally immune from suit for actions undertaken in the performance of its governmental functions. However, this broad immunity is limited by some narrowly drawn exceptions. *Jackson v Detroit*, 449 Mich 420, 427; 537 NW2d 151 (1995). The present appeal involves the public building exception to governmental immunity, which provides in pertinent part:

> Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition. [MCL 691.1406.]

To determine whether the public building exception is applicable, this Court has set forth a five-pronged test. Under the test, a plaintiff is required to prove that

> (1) a governmental agency is involved, (2) the public building in question is open for use by members of the public, (3) a dangerous or defective condition of the public building itself exists, (4) the governmental agency had actual or constructive knowledge of the alleged defect, and (5) the governmental agency failed to remedy the alleged

7

> defective condition after a reasonable period of time or failed to take action reasonably necessary to protect the public against the condition after a reasonable period. [*Kerbersky v Northern Mich Univ*, 458 Mich 525, 529; 582 NW2d 828 (1998), citing *Jackson, supra* at 428.]

It is the third element of this test that is at issue in the present appeal, whether a dangerous or defective condition of the public building itself exists.

### III.  *HORACE V CITY OF PONTIAC*

The Court of Appeals determined that neither the terrace nor the ramp is part of the buildings in question, relying on this Court's decision in *Horace*.  *Horace* was a consolidated appeal involving two different sets of facts, both of which involved injuries from defects in walkways.[8]  The first concerned a hole or crack eighteen to twenty-eight feet from the entrance doors of the Silverdome in Pontiac.  The second involved a hole in a walkway leading to the entrance of a building at a rest area on I-75.

The issue in *Horace* was whether the public building exception applies to dangerous or defective conditions of areas outside and adjacent to entrances or exits of public buildings.  *Horace, supra* at 746.  The Court concluded that "the ground adjacent to a public building is [not] a public 'building,' statutorily speaking . . . ."  *Id.* at 757.  Thus,

---

[8]The decision in *Horace* also resolved its companion case, *Adams v Dep't of State Highways & Transportation.*

8

the core holding of *Horace* is that mere sidewalks and walkways are clearly outside the scope of the public building exception.

However, the Court added in a footnote that the decision is not an absolute bar to injuries occurring from defective or dangerous conditions located outside the four walls of a building. The footnote states:

> The dissent suggests that our opinion may cut off liability for injuries resulting from the collapse of an outside overhang on a public building, stairs leading up to or down from an elevated building entrance, an underground tunnel leading into a building, an attached external ramp or railing. While it is not necessary for us to resolve these hypothetical situations in the case at bar, we note that an outside overhang is a danger presented by a physical condition of a building itself and that some stairs may also fit the test we adopt today if they are truly part of the building itself. [*Id.* at 756-757, n 9.]

We are now asked to further clarify the extent to which something outside a building falls within the exception.

IV. ANALYSIS

As an initial matter, we conclude that the Court of Appeals reading of *Horace* was overly broad. The appeals court decision mistakenly portrays *Horace* as stating a bright-line rule precluding liability for injuries occurring from dangerous or defective conditions of building parts outside an entrance or exit. By imposing an absolute bar on liability for injuries arising from something outside the four walls of

9

a building, the opinion precludes the possibility that an external part might be "truly part of the building itself."

While such an interpretation would be warranted by the words "in a public building," the Legislature did not choose that phrase.  Rather, it referred to injuries resulting from dangerous or defective conditions "of a public building," which implies that the conditions could pertain to parts of a building outside its walls.  We presume that "of" rather than "in" was carefully chosen to reflect legislative intent.  See *Reardon v Dep't of Mental Health*, 430 Mich 398, 410; 424 NW2d 248 (1988).

It is consistent with *Horace* and its treatment of the word "of" to consider the characteristics of the building and the item in question.[9]  If it must be determined whether the building possesses the item, surely the relative characteristics of both must be evaluated.

In some cases, a fixtures analysis will be helpful in determining whether an item outside the four walls of a building is "of a public building."  As recognized in *Velmer v Baraga Area Schs*,[10] a dangerous or defective fixture can support a claim of liability under the public building

_____

[9]*Horace* indicated that "of" is "used to indicate possession."  456 Mich 756.

[10]430 Mich 385, 394; 424 NW2d 770 (1988).

10

exception.

However, the fixtures analysis is limited to items of personal property that have a possible existence apart from realty. *Wayne Co v Britton Trust* observes that "[t]he term 'fixture' necessarily implies something having a possible existence apart from realty, but which may, by annexation, be assimilated into realty." *Wayne Co v Britton Trust*, 454 Mich 608, 614-615; 563 NW2d 674 (1997) (citation omitted). Where the facts do not lend themselves to a fixtures analysis because the item causing the injury has no existence apart from realty, the courts must look beyond the fixtures analysis to determine whether an item or area outside the four walls of a building is "of a public building."

Under the fixtures analysis, an item is considered part of the building if it is found to be a fixture. An item is a fixture if (1) it is annexed to realty, (2) its adaptation or application to the realty is appropriate, and (3) it was intended as a permanent accession to the realty. *Id.* at 615.

When a fixtures analysis does not apply, in determining whether an item or area outside the four walls of a building is "of a public building," the courts should consider whether the item or area where the injury occurred is physically connected to and not intended to be removed from the

11

building.[11]

## A.  *FANE v DETROIT LIBRARY COMMISSION*

A fixtures analysis is not applicable to the elevated library terrace in *Fane* because the terrace does not have an existence apart from the library.  Therefore, we must determine whether it is physically connected to and not intended to be removed from the building, making the terrace part "of a public building."

The terrace is a large stone area that is physically abutting and built into the library building.  It is not intended to be removed from the rest of the building in the foreseeable future.  Normally, to reach the main entrance, one walks along a sidewalk, up stairs to the elevated terrace, across the terrace, and up additional stairs.  If the terrace were removed, the doors to the library would be located approximately four feet off the ground.

We conclude that the elevated terrace is physically connected to and not intended to be removed from the library.  Accordingly, we are persuaded that the terrace is part of the building within the meaning of the public building exception.

---

[11]A temporary object or structure is normally not part of a building.  Consider, for example, scaffolding attached to a building only for the period necessary to complete construction.  Because it is clearly intended to be removed from the building, the scaffolding could not be considered part of the building.

The Court of Appeals erred in finding that the Fanes' claim was precluded by the holding in *Horace*.

B. *COX v BOARD OF REGENTS OF THE UNIVERSITY OF MICHIGAN*

The characteristics of the portable ramp indicate that it is personal property with a possible existence apart from the doorstep of the Fairlane Estate building. As such, the fixtures analysis is applicable.

There is no dispute that the portable ramp was not physically attached to the building and could readily be removed. *Wayne Co* states that annexation can be actual or constructive. Constructive annexation occurs where the item cannot be removed from the building without impairing the value of both the item and the building. *Wayne Co, supra* at 615-616. However, there is no evidence that removal of the ramp would impair the value of either the ramp or the building. Therefore, the ramp was not actually or constructively annexed to the building.

Although the ramp was adapted appropriately to the entrance, there is no evidence that it was intended as a permanent accession to the building. We conclude that the ramp is not a fixture and, therefore, not part of the building. Because it does not fall within the public building exception, the appeals court correctly determined that summary disposition was proper in *Cox*.

13

V.   CONCLUSION

*Horace* acknowledges that injuries occurring from dangerous or defective conditions of building parts outside the walls of a building can fall within the public building exception.  In determining whether an item or area outside the walls of a building is "of a public building," the courts must consider the characteristics of the building and of the item in question.  A fixtures analysis should be used where the item is personal property that could possibly have an existence apart from the realty.  However, where the facts indicate that the fixtures analysis does not apply, the courts should consider whether the item or area where the injury occurred is physically connected to and not intended to be removed from the building.

Applying this analysis to the undisputed facts in *Fane,* we conclude that the elevated terrace is part of the library building itself because the terrace is physically connected to and not intended to be removed from the library.  Hence, the Fanes are not precluded from pursuing their claim.  The Court of Appeals order instructing the trial court to enter summary disposition in favor of the commission is reversed.

However, we affirm in Cox.  Applying the undisputed facts, the ramp is personal property that could possibly have an existence apart from the building.  Therefore, the fixtures

14

analysis is applicable.  However, the ramp is not a fixture because it is not annexed to the building and was not intended as a permanent accession to the building.  Therefore, the ramp is not part of the building.

Accordingly, we affirm the decision of the Court of Appeals in *Cox* and reverse in *Fane*.

CORRIGAN, C.J., and CAVANAGH, WEAVER, TAYLOR, YOUNG, and MARKMAN, JJ., concurred with KELLY, J.