ALEXANDER v RICCINTO

Docket No. 115919. Submitted May 22, 1991, at Detroit. Decided November 19, 1991, at 9:25 A.M. Leave to appeal denied, 439 Mich —.

Woodrow Alexander brought an action in the Wayne Circuit Court against Leonard Riccinto and the City of Detroit after he was shot and wounded by Riccinto, an off-duty Detroit police officer, as he was allegedly attempting to burglarize Riccinto's home. Against Riccinto, the plaintiff alleged assault and battery, negligence, and a violation of his federally guaranteed civil rights, 42 USC 1983. Against the city, he alleged that it had a policy allowing the shooting of alleged felons involved in the theft of property that violated his federally guaranteed civil rights, 42 USC 1983. The defendants asserted as affirmative defenses governmental immunity from tort liability and that the city had no vicarious liability. The court, John H. Gillis, Jr., J., finding that the defendant clearly had a right to defend himself from burglars on his own property and that there was no question of fact to be determined, granted the defendants summary disposition. The plaintiff appealed.

The Court of Appeals *held:*

1. The grant of summary disposition to Riccinto was erroneous and must be reversed. There were issues of fact to be decided regarding whether he had a reasonable belief that he was in great danger before he responded with deadly force, whether the use of such force was authorized by the city's policies, and whether he acted in good faith and in the course of his employment. The question regarding Riccinto's entitlement to qualified immunity with regard to the § 1983 action cannot be determined until the reasonableness of his use of deadly force is resolved.

2. Summary disposition for the city was proper. If Riccinto acted in good faith and in the course of his employment and

REFERENCES

Am Jur 2d, Arrest §§ 80, 81, 84; Assault and Battery §§ 75, 77, 79; Civil Rights §§ 16-20; Municipal, County, School, and State Tort Liability §§ 179, 198-200.

See the Index to Annotations under Arrest; Assault and Battery; Governmental Immunity or Privilege; Intentional, Wilful, and Wanton Acts; Police and Law Enforcement Officers; Self-Defense.

was thus engaged in the exercise of a governmental function, the city is immune from tort liability. If he did not act in good faith or in the course of his employment, the city is immune from liability because it is not vicariously liable for the intentional torts of its employees. With respect to the § 1983 claim, a municipality cannot be held liable on a respondeat superior theory. It can only be liable under § 1983 if it has a policy, practice, or custom that resulted in the violation of constitutional rights and the policy, practice, or custom evidences or authorizes deliberate indifference, gross negligence, or recklessness. The city's policies that the plaintiff complained of are constitutional.

Affirmed in part, reversed in part, and remanded.

1. CRIMINAL LAW — ARREST — POLICE OFFICERS — REASONABLE FORCE — GREAT DANGER.

A police officer making a lawful arrest may use whatever force is reasonable in self-defense and, unlike a private citizen in similar circumstances, is not required to retreat before a display of force by an adversary; the officer must have a reasonable belief of great danger before responding with the appropriate amount of force to foreclose the threat, and what constitutes a reasonable belief of great danger and what is reasonable force are questions for the jury.

2. MUNICIPAL CORPORATIONS — EMPLOYEES — INTENTIONAL TORTS — VICARIOUS LIABILITY.

A municipal corporation may not be held vicariously liable for the intentional torts of its employees.

3. MUNICIPAL CORPORATIONS — CIVIL RIGHTS — RESPONDEAT SUPERIOR.

A municipal corporation cannot be held liable for a violation of 42 USC 1983 on a respondeat superior theory; liability under § 1983 may be found only if the municipality has a policy, practice, or custom that resulted in the violation of constitutional rights; mere negligence is insufficient, and the policy must evidence or authorize deliberate indifference, gross negligence, or recklessness (42 USC 1983).

*Marvin L. Berris,* for the plaintiff.

*Donald Pailen,* Corporation Counsel, and *Linda Fegins,* Senior Assistant Corporation Counsel, for the defendants.

Before: HOLBROOK, JR., P.J., and SULLIVAN and DOCTOROFF, JJ.

PER CURIAM. This case arises out of an incident in which plaintiff was shot and wounded by defendant Riccinto, an off-duty Detroit police officer, as he was allegedly attempting to burglarize defendant Riccinto's home. Plaintiff claimed tort damages and alleged liability for violation of his federal civil rights. Defendants were granted summary disposition by the trial court. Plaintiff now appeals that grant as of right. We reverse the summary disposition with regard to defendant Riccinto, but affirm with regard to the defendant city.

### FACTUAL BACKGROUND

On February 19, 1986, defendant Riccinto returned to his home at approximately 7:00 P.M.; it was dark and several vapor lights around the building were lit. As defendant was standing at his garage, he heard the sound of breaking glass coming from the direction of his mother's house next door. Defendant spotted what he termed to be "a quick movement" and saw a figure crouched behind a bush by his own house. Defendant then drew both his service revolver and his badge and shouted, "Freeze, police officer, you're under arrest."

Plaintiff failed to heed defendant's shouted instructions, and defendant fired one round from a distance of about twenty feet. Plaintiff moved but still did not surrender, at which point defendant fired the remaining rounds from his revolver. Defendant stated that he intended to shoot to kill because he feared for his life.

Plaintiff's medical records indicate that he sus-

tained several gunshot wounds, including three in the back. Defendant stated in his deposition that the only weapon found at the scene was a screwdriver.

Plaintiff's suit against defendant Riccinto alleged assault and battery, negligence, and a violation of his federally guaranteed civil rights. Against the defendant city, plaintiff alleged that it had an unconstitutional policy allowing the shooting of alleged felons involved in thefts of property. Defendants pleaded the affirmative defenses of governmental immunity and that the city could not be vicariously liable.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(7), (8), and (10). Although the governmental immunity issues were briefed, arguments at the hearing on defendants' motions were addressed solely to whether there was an issue of fact regarding whether defendant Riccinto's belief that his life was in danger was reasonable. In granting defendants' motions, the trial court stated: "The defendant clearly has a right to defend himself from burglars on his own property. The court does not believe there's any question of fact." Plaintiff moved for reconsideration, arguing that there was an outstanding issue of fact regarding the self-defense question. The motion was denied without explanation.

I

Plaintiff first argues that the trial court erred in granting summary disposition to defendant Riccinto because he never made any overtly aggressive acts toward defendant and therefore there was a genuine issue of material fact whether defendant was entitled to shoot the plaintiff in self-defense. We agree.

Plaintiff rests his argument on *People v Doss,* 406 Mich 90; 276 NW2d 9 (1979), which sets forth the standard to be employed when a police officer is prosecuted for conduct taken during an arrest. In affirming the determination that issues of fact regarding whether an officer's use of deadly force against a burglar was reasonable and necessary justified binding over the officer for trial, the Supreme Court held that the determination of reasonable force hinges upon the facts of the particular case and was thus a question for the jury. *Id.,* p 102, citing 5 Am Jur 2d, Arrest, § 81, p 768. Within reasonable limits, officers enjoy the discretion to determine the amount of force required by the circumstances and they are not guilty of wrong unless they arbitrarily abuse the power confided in them. *Id.*

In other words, a police officer making a lawful arrest may use that force that is reasonable in self-defense circumstances and is not required to retreat before a display of force by the adversary, unlike a private citizen in similar circumstances. Like a private citizen, though, the officer must have a reasonable belief of great danger before responding with the appropriate amount of force to foreclose the threat.

We believe that what constitutes a reasonable belief of great danger is to be determined by the jury on the basis of all the facts and circumstances as they appeared to the party at the time of the incident. Thus, we find that there were issues of fact posed in the case at bar that render the grant of summary disposition to defendant Riccinto erroneous, and we therefore reverse the decision of the trial court.

II

Plaintiff next argues that defendant Riccinto is

not entitled to summary disposition of tort claims on governmental immunity grounds because he is not entitled to protection from liability on those grounds. Although the trial court made no ruling with respect to the issue of governmental immunity in this case, the question is one of law, and we review such questions de novo. *People v Cook,* 96 Mich 368; 55 NW 980 (1893). Our review of the record in this case leads us to conclude that summary disposition in defendant Riccinto's favor should be reversed.

Inasmuch as the instant action arose in February 1986, we review the issue under the standards enunciated in *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984), and not the governmental immunity statute, MCL 691.1407; MSA 3.996(107), which covers only causes of action arising after July 1, 1986. Under *Ross,* lower level officers, employees, and agents are immune from tort liability when they are (1) acting during the course of their employment and are acting, or reasonably believe they are acting, within the scope of their authority; (2) acting in good faith; and (3) performing discretionary-decisional, as opposed to ministerial-operational, acts. *Ross, supra,* p 592.

To determine whether a tortfeasor was engaged in the discharge or exercise of a governmental function and thus was acting within the scope of authority, *Ross* relied on common-law tort and agency principles. *Id.,* pp 624, n 38, 631. Applying such an analysis to the facts at bar, we believe that the extensive nature of the defendant city's policy concerning the use of deadly force gives rise to questions of fact regarding whether defendant Riccinto's use of such force was authorized under the circumstances.

We also believe that the "good faith" prong of

the *Ross* test raises a question of fact as well. We do not believe it possible to determine whether defendant Riccinto acted in good faith without factual development. See *Ealey v Detroit,* 144 Mich App 324; 375 NW2d 435 (1985), lv den 424 Mich 902 (1986), cert den 479 US 931 (1986).

With regard to the third prong, there can be little doubt that defendant Riccinto's act was anything other than discretionary-decisional. Under *Ross,* police officers, especially when confronting situations fraught with potential danger, are to be given great discretion in determining what type of action ought to be taken and their determination is to be considered discretionary-decisional and thus immune from liability. *Ross, supra,* p 660. Once a course of action is determined, however, it must be undertaken in a nonnegligent manner. *Id.*

We therefore conclude that, as a matter of law, defendant Riccinto's conduct was discretionary-decisional. We believe, however, that factual development is required to determine whether he acted in good faith and in the course of his employment. Summary disposition of the governmental immunity issue is therefore reversed with regard to defendant Riccinto.

With regard to the defendant city, summary disposition of the governmental immunity issue was proper and is therefore affirmed. This is so no matter how the above-discussed questions of fact are resolved. If the factfinder determines that defendant Riccinto acted in good faith and in the course of his employment and was thus engaged in the exercise of a governmental function, the defendant city is immune, from tort liability. If the factfinder determines that defendant Riccinto did not act in good faith or in the course of his employment, the defendant city is still immune,

because it cannot be held vicariously liable for the intentional torts of its employees.

### III

Lastly, plaintiff argues that the actions of defendants constituted a violation of his civil rights under 42 USC 1983 and that defendant Riccinto is not entitled to summary disposition of this issue. Specifically, plaintiff maintains that defendant Riccinto's use of deadly force violated his Fourth Amendment right to be free from unreasonable searches and seizures.

In *Graham v Connor,* 490 US 386; 109 S Ct 1865; 104 L Ed 2d 443 (1989), the Supreme Court held that in § 1983 actions, "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Id.,* p 395. The reasonableness of the use of the force in question "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.,* p 396.

The question whether qualified immunity is available as a matter of law as a defense against a claim of excessive force by a law enforcement officer in effectuating an arrest is one on which the federal circuits disagree. See *Finnegan v Fountain,* 915 F2d 817, 822 (CA 2, 1990). While the *Finnegan* Court declared the defense is available in such circumstances, a defendant's entitlement to it can be determined only after a factfinder decides the threshold question whether the use of force was reasonable. *Id.,* pp 823-824.

Having previously held that the reasonableness of defendant Riccinto's use of force must be determined by the factfinder on remand, we believe the

question of his entitlement to qualified immunity cannot be determined until the factfinder makes its determination. Accordingly, we find the grant of summary disposition of the federal civil rights issue to be erroneous with regard to defendant Riccinto.

With regard to the defendant city, we again state that a municipality cannot be held liable under § 1983 on a respondeat superior theory. See *Monell v Dep't of Social Services of the City of New York,* 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978). Liability under § 1983 may be found only if the municipality has a policy, practice, or custom that resulted in the violation of constitutional rights. *Id.,* p 694. Further, "[m]ere negligence [in the application of the policy] is insufficient under § 1983; the applicable standard is [whether the policy evidences or authorizes] deliberate indifference, gross negligence, or recklessness." *Hill v Saginaw,* 155 Mich App 161, 171; 399 NW2d 398 (1986).

Plaintiff at bar has claimed that the defendant city had in place an unconstitutional policy allowing the shooting of felons involved in the thefts of property. Review of the applicable city policies, however, indicates that the policies approved deadly force only when absolutely necessary, only when knowledge of the commission of a crime was "a virtual certainty," and only when resistance of arrest was "dangerous."

These policies pass constitutional muster, and the defendant city was entitled to federal immunity. Thus, summary disposition was properly granted.

Affirmed with regard to the defendant city; reversed and remanded for proceedings consistent with this opinion with regard to defendant Riccinto.