PEOPLE v HAMPTON

Docket No. 137710. Submitted January 8, 1992, at Detroit. Decided
July 6, 1992, at 9:30 A.M.

Walter Hampton was bound over to the Recorder's Court of
Detroit for trial on charges of second-degree murder and posses-
sion of a firearm during the commission of a felony. The
defendant moved to quash the information on the basis that, as
a private citizen, he was entitled to use deadly force to ensure
the apprehension of the decedent, a fleeing felon. The court,
Dalton A. Roberson, J., quashed the information and dismissed
the charges. The prosecution appealed.

The Court of Appeals *held:*

A private citizen is justified in using deadly force to prevent
the escape of a fleeing felon where a felony actually has
occurred, the fleeing suspect against whom force was used
actually committed the felony, and the use of deadly force was
necessary to ensure the apprehension of the felon. While the
prosecution conceded that a felony had been committed and
that the decedent had committed it, the question whether the
use of deadly force by the defendant was necessary to ensured
apprehension of the decedent was one for a jury. Accordingly,
the Recorder's Court erred in quashing the information and
dismissing the charges.

Reversed.

*Frank J. Kelley,* Attorney General, *Gay Secor
Hardy,* Solicitor General, *John D. O'Hair,* Prose-
cuting Attorney, *Timothy A. Baughman,* Chief of
Research, Training, and Appeals, and *Thomas M.
Chambers,* Assistant Prosecuting Attorney, for the
people.

Legal Aid and Defender Association of Detroit
(by *Donald L. Johnson*), for the defendant.

Before: Michael J. Kelly, P.J., and Jansen and
T. J. Lesinski,* JJ.

T. J. Lesinski, J. The Wayne County Prosecutor
appeals as of right from an order of the Detroit
Recorder's Court granting defendant's motion to
quash the information charging him with murder
and possession of a firearm during the commission
of a felony. On June 13, 1990, defendant shot and
killed the decedent after the decedent had at-
tempted to break into his home and had broken
into his neighbor's garage. Defendant fired a shot
at the decedent as he attempted to leave the scene
with a lawn mower. Defendant was bound over by
the district court on charges of murder in the
second degree, MCL 750.317; MSA 28.549, and
felony-firearm, MCL 750.227b; MSA 28.424(2). De-
fendant subsequently brought a motion to quash
the information, which was granted by the lower
court on January 11, 1991. The prosecution ap-
pealed the lower court ruling. We reverse.

Defendant is a homeowner residing in the City
of Detroit. Early in the morning of June 13, 1990,
defendant was awakened by the sound of a kick at
his side door. Defendant got out of bed, retrieved a
.38 caliber pistol from his basement, and looked
out the window. He saw the decedent walking
down his driveway and away from his side door.
The decedent then walked across defendant's yard
to the yard of defendant's neighbor. The decedent
jumped over the gate in the neighbor's fence and
kicked in her garage door. The decedent then went
inside, came out, and threw something over the
gate. Defendant opened his door, fired one shot,
then closed the door. Defendant, upon learning
that his wife had notified the police, got ready for

* Former Court of Appeals judge, sitting on the Court of Appeals by
assignment.

work and left. On his way to work, he disposed of the handle grips and the cylinder of his gun.

After returning home and learning that the police had not come seeking him, defendant went to the police department, where he gave a voluntary statement regarding the events that occurred on the morning of June 13, 1990. He was subsequently arrested. At the preliminary examination, both parties stipulated the identity of the decedent and that he died of a gunshot wound to the head.

On the basis of the evidence adduced at the preliminary examination, defendant was bound over for trial on charges of second-degree murder and felony-firearm. Consequently, defendant brought in the Detroit Recorder's Court a motion to quash the information.

The parties stipulated the supplementation of the record by admitting the report of an evidence technician, which verified that the neighbor's garage had been broken into, that the decedent was in the process of pushing away a lawn mower when he was shot, and that the decedent's body was found 100 to 150 feet from the spot from which defendant had fired. The prosecutor, in response to the motion, did not contest that the decedent was a fleeing felon at the time he was shot. Rather, the prosecutor argued that the question of the necessity of the shooting was one of fact that should have been left for the jury to decide. The Recorder's Court judge rejected the prosecutor's arguments and entered orders granting defendant's motion and dismissing the charges.

The general standard utilized by this Court in situations where a trial court quashes an information is to determine whether the district court abused its discretion in binding over the defendant. *People v Talley,* 410 Mich 378, 385-386; 301 NW2d 809 (1981); *People v Sherman,* 188 Mich

App 91, 93; 469 NW2d 19 (1991). Where there is no abuse of discretion by the district court, a trial court's decision to quash the information should be reversed. *Id.*

In this case, the Recorder's Court, under the mistaken belief that the facts and circumstances in this case unquestionably justified defendant's use of deadly force, concluded that the district court had abused its discretion. The prosecutor argued below and on appeal that the use of deadly force by a private person to apprehend a fleeing felon must be reasonable under the circumstances, which is a factual question that should be left to a jury.

MCL 764.16; MSA 28.875 provides, among other things, that private persons may make an arrest for felonies committed in their presence. However, the statute fails to address the issue whether a private person may use deadly force. We therefore turn to the common law.

The common law recognizes two categories of justifiable deadly force used by a private person: where the person making the arrest is met with force from the person being arrested and where force is necessary to prevent the flight of a suspected felon. *People v Whitty,* 96 Mich App 403, 411; 292 NW2d 214 (1980). Because the facts here do not indicate that defendant perceived any threat of force by the decedent, resolution of this case hinges upon the latter category. According to this Court, the use of deadly force to prevent the escape of a fleeing felon is justifiable where the following three circumstances are present: (1) the evidence must show that a felony actually occurred, (2) the fleeing suspect against whom force was used must be the person who committed the felony, and (3) the use of deadly force must have

been "necessary" to ensure the apprehension of the felon. *Whitty, supra,* pp 411, 413.

Recently, the Michigan Supreme Court addressed the issue of the use of deadly force in situations involving a fleeing felon. In *People v Couch,* 436 Mich 414, 421; 461 NW2d 683 (1990), the Court held that the common law regarding a private person's use of deadly force to apprehend felons was adopted by the Legislature through its fifty-year acquiescence following the decision in *People v Gonsler,* 251 Mich 443; 232 NW 365 (1930). Moreover, the Supreme Court, responding to *Tennessee v Garner,* 471 US 1; 105 S Ct 1694; 85 L Ed 2d 1 (1985), ruled that private citizens, unlike peace officers acting under the color of state law, are not subject to the Fourth Amendment restraints that *Garner* imposed. Finally, the Court reversed the Court of Appeals ruling that would permit a private citizen to use deadly force only if he reasonably believed that the felon posed a threat of serious harm to himself or others.

At the hearing on defendant's motion to quash the information, the prosecutor conceded that decedent was in the process of committing a felony when he was shot. Thus, the first two elements of the deadly force doctrine have been established in defendant's favor. See *Whitty, supra; Gonsler, supra.* This leaves the more difficult question whether the shooting was "necessary," the resolution of which will determine whether the district court or the trial court was correct in this matter.

We conclude that the issue of necessity is one of fact that should have been left for the jury to decide. In *Alexander v Riccinto,* 192 Mich App 65; 481 NW2d 6 (1991), this Court held that the determination of reasonableness and necessity was a question for the jury where the lower court had granted summary disposition in favor of an off-

duty police officer who had shot a burglar hidden in the bushes outside his home. In reversing the lower court's grant of summary disposition, this Court stated that "the determination of reasonable force hinges upon the facts of the particular case and was thus a question for the jury." *Id.,* p 69, citing *People v Doss,* 406 Mich 90; 276 NW2d 9 (1979), and 5 Am Jur 2d, Arrest, § 81, p 768. The *Alexander* case concerned a police officer who, although off duty, was subject to the strictures of reasonableness developed pursuant to Fourth Amendment considerations surrounding searches and seizures. Because defendant in this case is a private citizen, Fourth Amendment constraints do not apply. See *Couch, supra,* pp 433-438 (separate opinion of ARCHER, J.). Thus, while we realize that *Alexander* is not on all fours with the case at bar, we, nonetheless, find support for the premise that the issue of necessity, if not reasonableness, is a question of fact for a jury to decide. See also *People v McCord,* 76 Mich 200, 206; 42 NW 1106 (1889) (brutal beating of a felon was not justified where he could have been arrested without injury to him or anyone else); *People v Smith,* 148 Mich App 16; 384 NW2d 68 (1985) (use of deadly force by a private citizen against a suspected felon was not justified where the citizen knew the residence of the suspected felon and police could have arrested the suspect there). We therefore conclude that the decision to bind over defendant for trial was a permissible exercise of the district court's discretion, because the justification for defendant's actions was a question of fact. See *Talley, supra; Sherman, supra.* Consequently, we reverse the Recorder's Court's decision to quash the information and dismiss the charges against defendant, and we reinstate the district court's determination. See *id.*

Reversed.